200 So.2d 842 (1967)
Roy Michael FELTON, Ralph Franklin Moore, James Hollingshead, Joseph W. Spirakis and Ralph James Armantrout, Appellants,
v.
The CITY OF PENSACOLA, Appellee.
No. H-472.
District Court of Appeal of Florida. First District.
July 6, 1967.
Rehearing Denied July 27, 1967.
*843 Levin, Askew, Warfield, Levin & Graff, Pensacola, and Haas, Holland, Freeman, Levison & Gibert, Atlanta, Ga., for appellants.
William C. Jones, Pensacola, for appellee.
CARROLL, DONALD K., J.
The appellants have appealed from an order entered by the Circuit Court for Escambia County, affirming a judgment of the Municipal Court of the City of Pensacola, convicting them of violating a municipal ordinance declaring unlawful the exposure, circulation, sale, or distribution of obscene printed materials.
While the parties hereto have designated and treated these proceedings as an appeal, the proceedings technically should be in certiorari since we are herein asked to review an order entered by a Circuit Court sitting in the exercise of its appellate jurisdiction. See Florida Civil Practice After Trial, Section 7.38, page 430. Pursuant to the provisions of Sec. 59.45, Florida Statutes, F.S.A., however, we will regard and act upon the notice of appeal and the record herein as a petition for certiorari duly presented to this court. We will, therefore, reach our conclusions in accordance with the principles applicable to proceedings in certiorari. In the opinion below we shall refer to the petitioners for writ of certiorari as the appellants.
The printed materials involved in this case are nudist magazines which were seized at the appellants' newsstands by a city police officer. The first question presented for our determination in this appeal is whether the said seizure was conducted in accordance with constitutional guarantees (and we hold here that the seizure was not so conducted) and, if not so conducted, whether the appellants at their trial preserved or waived their right to object to the admission into evidence of the magazines so seized. Since we hold herein that the appellants waived their said right, we must also answer the ultimate question in this appeal  were those nudist magazines in fact legally obscene under the mentioned ordinance of the City of Pensacola?
The transcript of the testimony taken at the trial in the Municipal Court establishes that the nudist magazines were seized by one Robert Godwin, a city police officer. He did not himself, however, arrest any of the defendants. The arrests were later made by the chief of police. *844 It is evident from the record that no search warrant has ever been issued against, or served upon, the defendants, authorizing the seizure of the said magazines.
The testimony of Godwin was stipulated to be applicable as to all of the defendants. Asked at the trial by the defense attorney as to what test he used to determine whether or not a publication violated the law, Godwin testified:
"I used no test, sir; I just used my own good judgment that nude men and women in a magazine together would be a violation of the law."
Immediately thereafter he also testified that that was the only test he used. Earlier in his cross-examination by the defense counsel, Godwin was asked as to what criteria he used to determine whether or not the particular publications violated the law. The officer responded:
"I was told by the Chief of Police to go up there and if they had this sort of literature up there to purchase or take some of this literature."
The importance of this issue raised in the appeal concerning the legality of the seizure procedure lies in the fact that the resolution of this issue requires us to determine whether the police officer's actions violated the guarantee of the freedom of speech and the press in the First Amendment to the United States Constitution and the guarantee of due process of law in the Fourteenth Amendment in the sensitive and controversial area of obscenity in printed materials. In considering such an issue, of course, the decisions of the United States Supreme Court are controlling.
In Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), a Missouri court had issued search and seizure warrants against a wholesale distributor of magazines, newspapers, and books, and against operators of retail newsstands, under Missouri procedures authorizing the search for and seizure of allegedly obscene publications preliminary to their destruction if found by a court to be obscene. The distributor and newsstand operators moved to quash the warrants and suppress as evidence the property seized pursuant thereto, on the ground, inter alia, that the Missouri procedures were invalid under the guarantee of free speech assured against state abridgment by the Fourteenth Amendment. The Missouri court denied the motions and found the items seized to be obscene. The Supreme Court of Missouri sustained the validity of the procedures. On appeal to the United States Supreme Court, the latter reversed the judgment, ruling that the Missouri procedures lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled. Before reaching this ruling the U.S. Supreme Court first recognized the doctrine that "a State's power to suppress obscenity is limited by the constitutional protections for free expression * * *" and that "under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech."
As in the case at bar, the printed materials in the Marcus case were seized after a police officer determined them to be obscene. Concerning the constitutionality of this procedure, the United States Supreme Court held:
"We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled. Putting to one side the fact that no opportunity was afforded the appellants to elicit and contest the reasons for the officer's belief, or otherwise to argue against the propriety of the seizure to the issuing judge, still the warrants *845 issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene. The warrants gave the broadest discretion to the executing officers; they merely repeated the language of the statute and the complaints, specified no publications, and left to the individual judgment of each of the many police officers involved the selection of such magazines as in his view constituted `obscene * * publications.' So far as appears from the record, none of the officers except Lieutenant Coughlin had previously examined any of the publications which were subsequently seized. It is plain that in many instances, if not in all, each officer actually made ad hoc decisions on the spot and, gauged by the number of publications seized and the time spent in executing the warrants, each decision was made with little opportunity for reflection and deliberation. As to publications seized because they appeared on the Lieutenant's list, we know nothing of the basis for the original judgment that they were obscene. It is no reflection on the good faith or judgment of the officers to conclude that the task they were assigned was simply an impossible one to perform with any realistic expectation that the obscene might be accurately separated from the constitutionally protected. They were provided with no guide to the exercise of informed discretion, because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity. See generally 1 Chafee, Government and Mass Communications, pp. 200-218. In consequence there were suppressed and withheld from the market for over two months 180 publications not found obscene. The fact that only one-third of the publications seized were finally condemned strengthens the conclusion that discretion to seize allegedly obscene materials cannot be confided to law enforcement officials without greater safeguards than were here operative. Procedures which sweep so broadly and with so little discrimination are obviously deficient in techniques required by the Due Process Clause of the Fourteenth Amendment to prevent erosion of the constitutional guarantees."
In the recent case of A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed. 809 (1965), the Supreme Court thus summarized its holding in the foregoing Marcus case:
"In Marcus the warrant gave the police virtually unlimited authority to seize any publications which they considered to be obscene, and was issued on a verified complaint lacking any specific description of the publications to be seized, and without prior submission of any publications whatever to the judge issuing the warrant. We reversed a judgment directing the destruction of the copies of 100 publications held to be obscene, holding that, even assuming that they were obscene, the procedures leading to their condemnation were constitutionally deficient for lack of safeguards to prevent suppression of nonobscene publications protected by the Constitution."
In our opinion, the seizure of the nudist magazines by the police officer in the case at bar falls squarely within the ban of the doctrine laid down by the U.S. Supreme Court in the Marcus case, supra, as well as by the courts in many other decisions following that doctrine. The procedure used in the present case, in which the police officer merely used his "own good judgment" in determining whether the publications were obscene, clearly contravened the guarantee of freedom of speech and the press in the First Amendment to the United States Constitution and the guarantee of due process of law in the Fourteenth Amendment.
Unfortunately for the appellants' position in this appeal, however, they are precluded *846 by rules established in Florida from taking advantage of the fact that the police officer seized the nudist magazines by using an illegal procedure. At the trial in Municipal Court the appellants' counsel expressly announced that they had no objection to admitting the magazines into evidence against them. The prosecutor offered the magazines into evidence and asked the said defense counsel whether there was any objection to their being offered in evidence, and the said counsel replied: "No objection." Later the prosecutor asked the said counsel: "And you understand and stipulate that the magazines in question will become part of the record and will be used in conjunction with the individual cases whereby they were stipulated as admitted?" To this the defense counsel replied: "This is correct." The Supreme Court of Florida has held that an accused waives his right to have evidence procured by illegal means excluded if he fails to make timely objection at the trial. See Fraterrigo v. State, 151 Fla. 634, 10 So.2d 361 (1942), and 13 Fla.Jur., Evidence, Sec. 184, page 186.
The appellants having thus affirmatively waived their right to object to the magazines being admitted into evidence, we cannot and do not hold that the Municipal Court committed error in so admitting them.
Since we must hold that prejudicial error was not committed in admitting the magazines into evidence because of the method of seizing them, we are then confronted with the ultimate problem of determining whether the nudist magazines seized from the appellants constitute "obscene printed materials" within the contemplation of the Pensacola ordinance which the appellants were charged with violating.
The question of what constitutes obscenity falls into one of the most difficult and mercurial areas of the law to-day. Judicial definitions of the term "obscenity" seem to be constantly changing, sometimes even in the same court or jurisdiction.
Because obscenity cases usually involve questions concerning the freedoms of speech and press as secured by the First Amendment to the U.S. Constitution, decisions of the federal courts are usually accorded special respect, especially those of the United States Supreme Court, the final authority on the interpretation of the First Amendment.
Looking, then, to the decisions of the U.S. Supreme Court, we find that the guidelines furnished in its decisions have undergone important changes during the last several years. In this consideration we have found very helpful the scholarly case comment by James Crabtree and Daniel Kearney, entitled "Constitutional Law: A Revised Standard of Obscenity," in the Summer, 1966, issue of the University of Florida Law Review, Vol. XIX, pp. 185-193.
The landmark decision of the United States Supreme Court in the field of obscenity is Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). In that case Roth was convicted in a U.S. District Court of violating a federal statute (18 U.S.C. § 1461), declaring that obscene materials are unmailable, and providing that whoever knowingly deposits such materials for mailing or delivery is criminally responsible. In a companion case, Alberts v. State of California, which is adjudicated in the same opinion and judgment as the Roth case, Alberts was convicted in the Municipal Court of the Beverly Hills Judicial District, State of California, of violating a California statute which makes criminally responsible every person who wilfully and lewdly writes or otherwise produces obscene or indecent material. The Supreme Court affirmed both convictions.
In the Roth opinion the U.S. Supreme Court first held categorically that "obscenity is not within the area of constitutionally protected speech or press." The court then defined obscene material as "material which deals with sex in a manner appealing to prurient interest." Finally, the court recognized *847 the following as the proper test with which to determine whether certain material is obscene: "* * * whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."
In the recent case of Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), the U.S. Supreme Court clarified, or expanded, the doctrine it had laid down in the Roth case. Ginzburg and three corporations controlled by him used the mails for distributing allegedly obscene literature, namely; the magazine "Eros," containing articles and photo essays on love and sex; a biweekly newsletter dedicated to "keeping sex an art and preventing it from becoming a science"; and "The Housewife's Handbook on Selective Promiscuity." While specifically recognizing the Roth test as proper in determining whether materials are obscene, the Supreme Court pointed out that the following considerations are also pertinent in such a determination:
"Where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be decisive in the determination of obscenity. Certainly in a prosecution which, as here, does not necessarily imply suppression of the materials involved, the fact that they originate or are used as a subject of pandering is relevant to the application of the Roth test."
Finally, the Supreme Court held:
"We perceive no threat to First Amendment guarantees in thus holding that in close cases evidence of pandering may be probative with respect to the nature of the material in question and thus satisfy the Roth test.
* * * * * *
"It is important to stress that this analysis simply elaborates the test by which the obscenity vel non of the material must be judged. Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation."
Our judicial duty, then, is to examine the nudist magazines involved in the case at bar in the light of the Roth test as supplemented by the additional considerations recognized in the Ginzburg case, in order to determine whether those magazines are legally obscene.
The magazines in question are apparently typical magazines of the nudist variety, filled with untouched photographs of nude men, women, and children, usually at a recreation area like a beach or swimming pool. We would think that such photographs would hold little interest for the "card-carrying" nudist but that the magazines were obviously designed to appeal to the prurient interest of the public generally. It is noted, too, that some of the persons shown appear again and again in the photographs, a fact indicating that professional models were sometimes used, that the photographs are posed pictures, and that they are not newsworthy pictures of chance scenes at nudist gatherings. Nearly all of the photographs appear to stress the portions of the body which are not normally revealed in public or in printed materials. As a matter of fact, practically all that the purveyor of such magazines has to sell is his willingness, for a price, to flout the moral code which society has built up through the generations as best for human beings in our civilization. These magazines scarcely pretend to be the publications of the nudist movement, there is very little textual material in them, and little or nothing in them about the activities of nudist groups. Their only function and *848 purpose are obviously to appeal to the prurient interest of the public. In fact, their only sales value is their showing of pictures that other publications do not contain through deference to the moral code of the community.
In the words of the Roth test, we think that the trier of the facts could properly hold that the dominant theme of the magazines in question, to the average person applying contemporary community standards, "taken as a whole appeals to prurient interest." This conclusion, we think, is also consistent with the consideration of the sordid business of pandering, as discussed in the Ginzburg case, supra.
Nevertheless, we concur in what appears to be the generally prevailing view that nudity alone is not obscene. See Sunshine Book Company v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352 (1958). That does not mean, of course, that nudity may not become obscene by its manner of presentation and by "pandering."
We fully realize the great difficulty faced by a judge or some other person, who may be charged with the duty of determining whether a certain material is obscene or not. Such a determination is largely a subjective thing, for what is obscene to one person may seem perfectly proper to another. To paraphrase a poet's words: Obscenity "lies in the mind of the beholder." Another apt expression might be: Obscenity to him who obscenity thinks. Fortunately, however, the U.S. Supreme Court in the Roth and Ginzburg cases, supra, has furnished some usable guidelines, which we have tried to apply herein.
There are two additional factors in this appeal that reinforce our decision to concur in the holding of the municipal court that the magazines in question are legally obscene.
The first factor is the fact that the municipal court in the proceedings before it sat as the trier of the facts, and the question of obscenity was at least in part a question of fact for the trier of the facts to determine. It is fundamental, of course, that an appellate court may not substitute its judgment for that of the trier of the facts, where there is sufficient, competent evidence to support the trier's factual findings.
The second factor is the fact that the test of obscenity recognized in the Roth case, supra, is whether "to the average person, applying contemporary community standards" the dominant theme of the material taken as a whole appeals to prurient interest. Certainly the judge of the Municipal Court of the City of Pensacola is in a much better position than the members of this court to know the "contemporary community standards" prevailing in the said city, where the alleged offenses took place. Incidentally, the record of the trial proceedings shows that the municipal court was aware of the Roth decision and endeavored to apply the test of obscenity recognized therein.
We have considered the other points raised by the appellants herein and find those points to lack substantial merit.
For the foregoing reasons, we affirm the said decision of the Circuit Court, and the writ of certiorari must and it is
Discharged.
WIGGINTON, C.J., and SACK, J., concur.