David G. CAIN et al., Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 14, 1969.

**770**

James E. Thornberry, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., George F. Rabe, John B. Browning, Asst. Attys. Gen., Frankfort, for appellee.

Stuart A. Handmaker, Louisville, for Kentucky Civil Liberties Union, Inc., amicus curiae.

Charles H. Keating, Jr., Cincinnati, Ohio, James J. Clancy, Sun Valley, Cal., Ray T. Dreher, Clayton, Mo., Carl F. Guy, East Syracuse, N. Y., Richard M. Bertsch, Cleveland, Ohio, Albert S. Johnston III, Biloxi, Miss., for Citizens for Decent Literature, Inc., amici curiae.

OSBORNE, Judge.

The defendants were convicted after a jury trial in the Jefferson Circuit Court on two separate charges: one, of bringing an obscene motion picture film, "I, A Woman," into the Commonwealth of Kentucky for exhibition, with prior knowledge of its obscenity; and, two, of exhibiting an obscene motion picture entitled, "I, A Woman," with knowledge of its obscenity.

This appeal is from a judgment of conviction assessing fines upon the jury verdict.[1] They are now contending that the judgment of the trial court should be reversed for the following reasons:

1. That the statute under which they were convicted. KRS 436.010, is unconstitutional because it is in violation of the First and Fourteenth Amendments of the Constitution of the United States.

2. That the statute, if not unconstitutional, is so conflicting and inconsistent in its provisions that it can not be executed and is, therefore, void because of its ambiguity.

3. That the judgment should be reversed because the trial court excluded all expert testimony concerning the film and the conviction was based upon an exhibition of the film itself.

4. That the trial court admitted irrelevant, improper and prejudicial testimony.

5. That the trial court improperly refused to direct a verdict of acquittal since the film was not proven obscene.

There were other issues raised in the trial court, but since they are not stated as grounds for reversal upon this appeal and are not listed in the points and authorities, they are deemed waived and will not be considered. The points relied upon for reversal will be considered in their respective order.

KRS 436.101 makes it unlawful for any person to knowingly send or cause to be sent for the purpose of sale or distribution in this state, or to distribute in this state, or to possess for the purpose of distribution, or to exhibit any obscene matter. Obscenity is defined in the statute to mean material in which, "to the average person,

---

1. The jury fixed punishment upon the various defendants as follows:

| | | |
|---|---|---|
| Saul Shiffrin | Count one | $1000 |
| Saul Shiffrin | Count two | 1000 |
| David G. Cain | Count four | 500 |
| David G. Cain | Count five | 500 |
| David G. Cain | Count six | 500 |
| David G. Cain | Count three | Not guilty |

applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters."

Appellants point out that motion picture films are entitled to the constitutional protection of freedom of speech awarded by the First and Fourteenth Amendments. They cite in support of this contention Kingsley International Pictures Corp. v. Regents of the University of the State of New York, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512. Although there may be many sound arguments why this should not be so, it is nevertheless true that the Supreme Court of the United States has so held and by this we are bound. However, we do not believe the Supreme Court has held this statute or those of similar import to be unconstitutional per se. In Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498, the court upheld the constitutionality of state anti-obscenity statutes and there approved the phraseology of a California statute and a federal statute. In that case the court approved the definition of obscenity formulated by the American Law Institute in its Model Penal Code, section 207.10(2). In a footnote to the Roth-Albert opinion, the court stated:

"We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the American Law Institute, Model Penal Code, Section 207.10(2) Tentative Draft No. 6, 1957), viz.: * * * * 'A predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. * * *' "

We have found no case subsequent to the Roth opinion which has retracted, modified or overruled the above language. It is contended in appellants' brief that the court in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515, has in effect modified this language and partially limited state control of obscenity to the three areas of juveniles, invasion of privacy and pandering. Our analysis of this opinion and those opinions cited therein leaves us with much doubt as to exactly what the court intended. This doubt is compounded by the action in Miskin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56, wherein the court by a clear majority opinion, affirmed a Michigan conviction for selling and distributing obscene material. This case did not involve juveniles, invasion of privacy or pandering and as far as we can tell the principles enunciated therein are still in full force and effect for it was cited with approval in Ginsberg v. United States, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (April, 1968).

We do not interpret the Redrup v. New York opinion as being controlling upon the issue here before us for the simple reason that there was no clear majority of the court in support of any of the numerous principles set out therein. Appellants further contend that the legal test of obscenity was modified in "A Book Named John Cleland's Memoirs of A Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1, 5 (1966) and as a result of that opinion a third separate independent test is added to the requirements of our present statute and that is that the material must be "utterly without redeeming social value." We do not read this requirement in the case for the reason that this again was a no clear majority opinion. The test was joined in by only three justices of the court. Conceding that these three justices interpreted the Memoirs case as making the redeeming social value test a new factor for the determination of obscenity, this test was not approved by the other justices of the court and, therefore, in our opinion it has not become the law on this subject. We have examined the Roth-Albert case, supra,

and believe it still to be controlling authority upon the test of what is obscenity and KRS 436.101 is in conformity with the test therein approved. The fact that the trial court submitted to the jury the additional test as to whether the material was utterly without social value only made the instruction more favorable to the appellants than they were entitled to under the law. For the foregoing reasons, we are of the opinion that KRS 436.101 is constitutional.

■ Appellants' second contention is that the statute is fatally contradictory upon its face. The thrust of this argument centers around two words, the words "content" and "obscenity." It will be noted that our statute makes it unlawful to transport, etc., any material having knowledge of the "obscenity" thereof. They point out that the Supreme Court in requiring scienter phrased the requirement in terms to require the guilty party to have knowledge of the "content." As we construe this language the knowledge of obscenity means nothing more than the knowledge of the contents of the material. The Superior Court of California has dealt with this in People v. Pinkus, 256 Cal.App.2d Supp. 941, 63 Cal.Rptr. 680, and we are in full accord with the treatment given there. The California court said and we agree:

"We cannot impute to the Legislature an intent to employ the words 'knowledge that the material is obscene' in a sense that would render prosecutions under Penal Code § 311.2 an impossibility. Awareness of the contents of a matter and that it is of obscene character or nature was all that was intended and all that is constitutionally required."

Therefore, we do not believe there would be any contradiction in the statute that would render it fatally defective.

■ Appellants' third contention is that the judgment should be reversed because the trial court excluded expert opinion testimony and based its conviction upon the exhibition of the film itself. Space

here does not permit a lengthy explanation of the history and place in our law of opinion testimony. For those who are interested, it may be found in Wigmore on Evidence, Vol. 7, 3rd Ed. section 1917 et seq. A thumbnail synopsis of the matter is that prior to 1700 only facts were received in Anglo-Saxon courts as the basis of a judgment. The right to exercise an opinion was reserved to the court or to the jury. However, there gradually developed over the years, first, a rule that permitted those who were expert in a field and had special knowledge to give conclusory opinions upon established facts, especially when the opinion required special or scientific training. Later there evolved a principle which permitted lay witnesses who were not especially trained to render conclusions upon complicated facts that could not properly be brought or presented before the jury. This rule principally evolved out of cases involving values of property and insanity. It has never been the law and is not the law today that a party in litigation has the right to present opinion evidence by lay witnesses on matters that can as easily be interpreted by the jury. The jury should be permitted to draw its own conclusions. The rule is stated in Wigmore on Evidence, Vol. 2, 3rd Ed., p. 637, § 557:

"There is a rule of Evidence (post, § 1918) which excludes, on the ground of superfluity, testimony which speaks to the jury on matters for which all the materials for judgment are already before the jury. This testimony is excluded simply because, being useless, it involves an unnecessary consumption of time and a cumbersome addition to the mass of testimony. In the majority of instances the testimony thus excluded will consist of an 'opinion' by the witness, i. e. a judgment or inference from other facts, as premises, and it will be excluded because the other facts are already or may be brought sufficiently before the tribunal. * * *"

The expert witness, whom appellants proposed to call, was a gentleman from New

York. It was inconceivable that he could have a better opinion of the community standards of Louisville, Kentucky, than the twelve jurors sworn to try the case. It was inconceivable that he could portray more vividly or more realistically the contents of the film to be shown than would be revealed by showing the film itself. It was not shown or demonstrated by the record that he was a person learned in the law so we do not believe he could give to the jury a better definition of obscenity than was obtained in the instructions of the court. In short, we fail to see how his opinion one way or the other could be of any value to the jury in determining whether or not the film viewed by them violated the laws of obscenity of this Commonwealth. This being true, the trial judge undoubtedly had the authority to exclude the testimony.[2] We are not alone in this position. In State v. Smith, Mo., 422 S.W.2d 50, (November 13, 1967), the Missouri Supreme Court in an obscenity case involving the book, *Candy,* made this observation: "In the field of obscenity the average citizen is as capable of judging the publication 'as an alleged expert.'" The court went ahead to observe that it could see no reason to admit the substitution of the opinion of authors and critics for that of the average person in matters of this kind as it required little perception to conceive that the actual content of the material may negate the endorsement or testimonial of all experts or sophisticates.

■ The same result was reached in California v. Pinkus, 256 Cal.App.2d Supp. 941, 63 Cal.Rptr. 680, (October 26, 1967). There the court held it was not a constitutional requirement that expert testimony be received if the necessary elements could be established by other proof. The court pointed out that the jury represented a cross section of the community and had a special aptitude for expressing the view of the average person. We believe it to be academic that a state is not barred from considering the trier of fact as the embodiment of the community standards. There can be no doubt but what the jury is competent to judge whether a work is obscene when these standards are applied. In support of their contentions on this point, appellants rely primarily upon a concurring opinion by Mr. Justice Douglas in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, supra. The opinions of Mr. Justice Douglas, when they are only for himself, do not constitute law upon this matter. Mr. Justice Douglas has never purported to follow the law established by his court or any other court where matters of obscenity are involved. This fact was noted by Mr. Justice Harlan recently in Interstate Circuit, Inc. v. Dallas, 390 U.S. 676 at 705, 88 S.Ct. 1298 at 1314, 20 L.Ed.2d 225 at 244, (April 2, 1968) when he remarked:

> "Two members of the Court steadfastly maintain that the First and Fourteenth Amendments render society powerless to protect itself against the dissemination of even the filthiest materials. No other member of the Court, past or present, has ever stated his acceptance of that point of view. * * *"

We are of the opinion that no error was committed by the trial court in the exclusion of opinion evidence regarding the film in view of the fact that the film itself was exhibited to the jury. If the exclusion had been error in our opinion it would not have been prejudicial to the rights of the appellants on this appeal as no avowal was taken.

■ Appellants' fourth contention of error is that the trial court admitted irrelevant, improper and prejudicial testimony. This controversy centers about the fact that the court without objection allowed certain questions and answers showing that the theatre had changed its mode of operation, including its showing hours, which would demonstrate to the jury that it had

---

2. There was no contention the film was exempt as scientific or educational under § 7 of the Statute. A defense under this section might require expert testimony.

altered the type of material normally shown. Some of these questions related to acts that had been done subsequent to the time of the seizure of the film, "I, A Woman." When counsel for appellants objected, the trial court sustained the objection. Counsel then requested that the jury be admonished not to consider the matter and the trial court admonished: "I think the jury can see for itself." The questions could have been objected to at the time they were asked and a ruling requested of the court at that time. Appellants were a little late in waiting until a series of question had been answered before making their objection. However, without passing upon this point, we are of the opinion that the matter presented was not prejudicial. Another portion of the testimony showing that cuts were made in the film prior to its showing was relevant to the question of scienter. It was calculated to show that appellants had knowledge of the "contents" of the material which they were displaying. Otherwise they would not have altered it. The questions concerning the hours of operation and change of those hours were calculated to show that the theatre management was attempting to alter the make-up of the audience in order to change the material which would be shown. Circumstances under which alleged obscene and pornographic material is presented are relevant to determine whether social importance claimed for the material is in fact a reality. Ginzburg v. United States, supra. For the foregoing reasons we are of the opinion that these facts probably were competent even though some of them transpired after the date of the showing of this particular movie. They demonstrated a mode, manner and practice of doing business which directly related to the type of material being presented by the theatre. In our opinion, this evidence not only had some probative value on the obscenity issue but also on appellants' knowledge that this film represented a departure from those of customary standards, which are shown to normal theatre audiences.

Appellants' fifth and final contention is they were entitled to a directed verdict of acquittal because the film shown was not proven to be obscene. As we view this matter, it is not the function of this court or any other appellant court to determine whether the material shown is obscene. This is a factual determination to be made by a jury. The film was shown to the jury and they found it obscene. Our function as an appellate court is limited to determining whether the evidence in the record supports the findings of the jury. If so, the verdict must stand. This law is so basic and ancient to the principles of English and American jurisprudence and so elementary in its application as a principle of appellate procedure that we do not feel called upon to cite authorities for its support.

We have viewed the evidence presented to the trial jury. The film is a 90-minute motion picture devoted almost entirely to the sexual encounters of one female by the name of Eve. It opens by showing Eve nude in her bedchamber engaged in the practice of caressing herself in a suggestive manner to the accompaniment of her father's violin. She progresses to a passionate love scene with her fiance, Svend, while lying fully clothed on top of him in her bedchamber. This act is performed with the camera full on the subject. From this the film proceeds to the act of intercourse with a married patient, Heinz Goertzen, in a hospital room where Eve is employed as a nurse. This act she solicits with the use of nude photographs taken of her by her fiance for this specific purpose. During the course of the sequence, the camera focuses upon the head of the male partner and the stomach area of the female partner. It shows the male partner caressing with kisses the area between the navel and the pubic hair. The camera then shifts during the act of intercourse to the face of the female subject. After this, the film follows the life of Eve from one act of sexual intercourse to another until it has been accomplished some five times,

all with different partners. Each time the act is as vividly portrayed upon the screen as was the scene in the hospital room. In one instance the sex act is in the form of rape. The film represents nothing more than a biography of sexuality. There is no story told in the film; it is nothing more than repetitious episodes of nymphomania. Nudity is exposed in such manner that if the subject had posed in person instead of on film she would have immediately been arrested for indecent exposure. We are of the opinion that the jury not only had sufficient evidence before it upon which to base its verdict but that this evidence was overwhelming. The Supreme Court of the United States held in the Roth case that obscenity is not protected by the First and Fourteenth Amendments to the Constitution of the United States. As far as we have been able to determine, this holding has never been reversed or modified. The court has occupied itself since that ruling in a somewhat futile attempt to determine what is obscene and what is not obscene. This problem has given the judiciary of this country the greatest challenge of its history and as of the date of this opinion the judicial record reflects nothing more than indecision and failure.

While the courts have vacillated and over-explained, divided and fought, the sentiments of the people of this country have been clear and unassailable. All fifty states of this nation have obscenity laws. From the years of 1800 to 1956, the Congress of the United States passed 20 acts dealing with obscenity. It seems to be universally believed everywhere, except in the halls of the judiciary, that obscenity as such is not entitled to the constitutional protection awarded free speech.

■ Many times the right to pose a question is tantamount to the right to answer or at least partially so. Down through the years we have been asking ourselves when dealing with pornography and obscenity, "Is it harmful?" Of course, this answer can not come without a certain amount of reservation because the proof is hard to come by and often inconclusive. Therefore, we keep asking the same question and giving the same answers with reservations. If we were to change the form of the question and ask, "Is it beneficial?" the answer would come loud and clear. Certainly no benefit can come to any individual or any society by the use or dissemination of pornographic and obscene material. This being so why should we longer expend the time and energies of the greatest minds of this country in preserving its presence upon the newsstands and in the theatres. It is our opinion that the jury had sufficient evidence before it to hold the film obscene. There can be no doubt but what it is without any redeeming social value whatsoever; that it appeals to the prurient interests and that it deals exclusively with sex. For these reason we are of the opinion that it is not entitled to the protection of the First and Fourteenth Amendments of the Constitution of the United States.

The judgment is affirmed.

All concur.