## STATE v. ROBERT CARLSON, d.b.a. DISCOUNT BOOK AND MAGAZINE STORE, AND ANOTHER.

192 N. W. (2d) 421.

November 5, 1971—Nos. 42278, 42279.

*Stacker, Silverstein, Burke & Radsom* and *Thomas J. Burke,* for appellants.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *Thomas E. Plante,* City Attorney, and *Victor D. Ulmer,* Assistant City Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Frank T. Gallagher, JJ. Reconsidered and decided on the record by the court en banc.

NELSON, JUSTICE.

Criminal proceedings for violation of Minn. St. 617.241 were brought against defendant-appellants, Robert Carlson and S. Peter Getman, by the State of Minnesota in the municipal court of Duluth. A jury found defendants guilty on 29 of 33 counts charging the distribution of obscene materials and the court sentenced each defendant to a maximum fine of $100 on each of the 29 counts on which he was convicted, or $2,900. Defendants obtained writs of prohibition to stay imposition of the fines and appealed to this court from the judgments of conviction.

At about 2:15 p. m. on July 2, 1969, police officers of the city of Duluth entered the Discount Book and Magazine Store, 123 East Superior Street, Duluth, presented a search warrant to defendant Getman, and seized 54 reels of movie film. The Discount Book and Magazine Store is located on the main business street in Duluth and most of its merchandise is sex-oriented literature and pictorial matter. At the time of the seizure, the store was owned and operated by defendant Carlson. Defendant Getman was employed in the store as a sales clerk.

Defendants were each charged with possession of obscene

movies with intent to sell in violation of § 617.241, which reads as follows:

"It is unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene. 'Obscene' for the purpose of this section is defined as follows: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests.

"Any person violating any provision of this section shall be fined not less than $20 nor more than $100 for each offense."

At the trial, the state called as witnesses two police officers who testified that a search warrant had been executed at the store, pictures had been taken of the layout of the store, and that 54 reels of film had been seized. The officers were also called upon to introduce into evidence photos and a diagram of the store and the 33 reels of film alleged to be obscene. The films were shown to the jury and the state then rested.

The defense stipulated that both defendants had a general knowledge of the contents of the films and that each of them exhibited, offered for sale, or attempted to distribute each of the films that had been seized. Defendant Getman testified that from 35 percent to 40 percent of the store's material is not sex-oriented; that the store's material comes by mail, by truck, and through a local distributor; and that several hundred people enter the store daily. The defense also attempted to offer into evidence books and magazines purchased at two other bookstores in Duluth. Objections were sustained to this offer and to all other offered defense exhibits.

On October 9, 1969, the jury found both defendants guilty on 29 counts charging violation of § 617.241 and not guilty on 4

counts. Questions presented by this appeal are: (1) Did the state present sufficient evidence to sustain findings of guilty beyond a reasonable doubt on any of the 29 counts? (2) Was it error for the trial court to exclude defendants' exhibits, which they claim would have provided evidence to the jury of current community standards? (3) Are defendants protected by the First and Fourteenth Amendments to the Federal Constitution from prosecution for offering these films for sale? (4) Is Minn. St. 617.241 unconstitutional for failure to incorporate into its definition of "obscene" the element "utterly without redeeming social value"? (5) Did the trial court err in treating each count in the complaints against defendants as a separate offense and imposing a fine for each count on which they were convicted?

We find no grounds for reversing the lower court on the first four issues but conclude that the trial court erred in imposing a fine on each of the counts on which defendants were found guilty, and order modification of the judgments accordingly.

■ Defendants argue that the state did not present sufficient evidence to sustain the jury's finding of guilty on any of the 29 counts, contending that no evidence was offered to establish the elements of the offense—that the dominant theme of the materials taken as a whole appeals to a prurient interest in sex; that the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and that the material is utterly without redeeming social value. They contend it was error to allow the jury to make a decision on the contents of the films without receiving any aid in ascertaining the contemporary community standard or the question of lack of social value. These arguments are not persuasive. We concur with decisions which have expressly or impliedly concluded that a jury, properly instructed, is fully capable of determining whether conduct or material appeals to a prurient interest and offends contemporary community standards, without expert testimony on the subject, and that such testimony is not essential to appellate review.

Kahm v. United States, 300 F. 2d 78 (5 Cir. 1962), certiorari denied, 369 U. S. 859, 82 S. Ct. 949, 8 L. ed. 2d 18 (1962).

Defendants having stipulated at the trial that they had a general knowledge of the contents of the films, and that each of them exhibited, offered for sale, or attempted to distribute each of the films that were seized, the only other element of the crime to be proved against them at the trial was that the films were obscene. The trial judge read the statute's definition of "obscene" to the jury, and further charged them that under that definition they had to determine as questions of fact three elements which had to coalesce or combine: Whether the dominant theme of each film, taken as a whole, appeals to a prurient interest in sex; whether the films were patently offensive because they affronted contemporary community standards relating to the description or representation of sexual matters; and whether the films were utterly without redeeming social value.

The trial judge elaborated further by explaining that the test in each case was the effect of the film in its entirety, not upon any particular class, but upon all those whom it was likely to reach, and by instructing the jury that the films were to be judged by the standards of the national or state-wide community and not necessarily by the standards of a local community such as Duluth.

We think these instructions were quite sufficient to explain the elements of the offense under decisions of the United States Supreme Court and to enable the jury to determine whether defendants were guilty or innocent of the charges against them.

To defendants' contention that the jury needed expert assistance in determining the contemporary community standards and the question of whether the films lacked social value, our only reaction is to ask why. These films speak for, and are, themselves evidence of their obscenity. They make no pretense of even attempting to enter the borderline area of works which conceivably have some redeeming social value, and defendants make no claim that they possess it. We also think it may fairly be said

that no amount of testimony by psychoanalysts, sociologists, or anthropologists would be any more reliable on the question of whether these films affront contemporary community standards than the opinion of the jurors in this case.

Similarly, we do not see the relevance or materiality of books, magazines, or evidence about a "live" dancing show, which defendants sought to introduce to show the contemporary community standards. Defendants did not establish that their proffered material was reasonably acceptable to the community, or that it was similar to the subject matter of the prosecution. The issue at trial was the obscenity of the films. What probative value these proffered exhibits would have in determining this issue would be minimal, and the resulting effort required by the jury to peruse this mountain of material would have only been confusing and wasteful of time. See, Womack v. United States, 111 App. D. C. 8, 294 F. 2d 204 (1961), certiorari denied, 365 U. S. 859, 81 S. Ct. 826, 5 L. ed. 2d 822 (1961).

As we view it, defendants are not afforded protection by the First and Fourteenth Amendments since there was evidence of pandering in their distribution which set the films in question aside from material deemed protected under Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. 2d 515 (1967). Photographs of different areas of the interior and exterior of defendant Carlson's store were introduced into evidence. The store is located on Duluth's main business thoroughfare, Superior Street, and two of the photos show the display windows which greet passers-by. One window prominently displays about 70 different paperback novels dealing with varying and inviting topics of sex. Another window displays in equal prominence an assortment of "girlie" magazines. Signs in two different display areas of the windows proclaim in bold print, "YOU CANNOT BE ARRESTED while Shopping our Store" and, "ADULTS ONLY, You must be 18 to Enter Store."

It seems to us that the particular selection of magazines and books placed in the windows, accompanied by the signs warrant-

ing that the shopper could not be arrested in the store, were designed to represent that the material found in the store was erotically arousing, salacious, and prurient and therefore constituted pandering, denying defendants First Amendment protection. As Mr. Justice Brennan, writing for the majority in Ginsburg v. United States, 383 U. S. 463, 474, 86 S. Ct. 942, 949, 16 L. ed. 2d 31, 40 (1966), stated:

"We perceive no threat to First Amendment guarantees in thus holding that in close cases evidence of pandering may be probative with respect to the nature of the material in question and thus satisfy the *Roth* test."

Defendants further contend that Minn. St. 617.241 is unconstitutional for failure to incorporate into its definition of obscenity the requirement that the material be "utterly without redeeming social value." Defendants rely upon Stein v. Batchelor, 300 F. Supp. 602 (N. D. Tex. 1969),[1] for this proposition. In that case, a three-judge Federal court found a Texas obscenity statute unconstitutional on its face, since the statute did not contain the "utterly without redeeming social value" element delineated in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" [Fanny Hill] v. Attorney General, 383 U. S. 413, 86 S. Ct. 975, 16 L. ed. 2d 1 (1966). However, three-judge panels from Federal courts in Louisiana, Georgia, Kentucky, and Alabama have held that the elements of obscenity, as specified in Supreme Court cases subsequent to Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. 2d 1498 (1957), need not be specifically included in a state statute.

In Cambist Films, Inc. v. Tribell, 293 F. Supp. 407 (E. D. Ky. 1963), a three-judge court held that the Kentucky statute before the court was not unconstitutional even though the statute did not explicitly contain the "utterly without redeeming social

---

[1] Vacated and remanded by the United States Supreme Court February 23, 1971, sub nom. Dyson v. Stein, 401 U. S. 200, 91 S. Ct. 769, 27 L. ed. 2d 781.

value" element in defining obscenity. That court thought that Memoirs did not change the basic definition of obscenity found in Roth (and in § 617.241). The court construed Memoirs as explaining the Roth test. In Delta Book Distributors, Inc. v. Cronvich, 304 F. Supp. 662 (E. D. La. 1969), a Louisiana Federal court concurred with the court in Cambist and also found that the Louisiana statute, even though it did not contain the element of "utterly without redeeming social value," satisfied constitutional requirements if it were judicially interpreted and applied in light of Memoirs.[2]

We find the reasoning in Cambist and Delta Book Distributors, Inc. persuasive in the case at bar. In addition, this court, in considering a challenge to the constitutionality of a law, is governed by well-established principles:

"A law is not to be declared unconstitutional by the courts unless palpably so. The power of the courts in this regard is to be exercised only when absolutely necessary, and then with extreme caution. Unless a law is unconstitutional beyond a reasonable doubt it must be sustained." 17B Dunnell, Dig. (3 ed.) § 8931.

Here, the trial court properly construed § 617.241 as including "utterly without redeeming social value" and properly instructed the jury how to interpret and apply the definition of obscenity in the statute. We find § 617.241 to be constitutional in all respects.

■ As already noted, defendants contend that their being sentenced on all 29 counts for violation of § 617.241 is proscribed by § 609.035, which provides:

"Except as provided in section 609.585, if a person's conduct constitutes more than one offense under the laws of this state

---

[2] See, also, Entertainment Ventures, Inc. v. Brewer, 306 F. Supp. 802 (W. D. Ala. 1969); The Great Speckled Bird of the Atlanta Co-op. News Project v. Stynchcombe, 298 F. Supp. 1291 (N. D. Ga. 1969); City of Chicago v. Kimmel, 31 Ill. 2d 202, 201 N. E. 2d 386 (1964).

he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts."

We again call attention to the fact that the last paragraph of § 617.241 reads, "Any person violating any provision of this section shall be fined not less than $20 nor more than $100 for each offense." The state contends that defendants' conduct was separable and constituted 29 separate violations of § 617.241. The state further argues that defendants came within the scope of this statute when they exhibited, offered for sale, or attempted to distribute any film which was the subject of one of the 29 counts on which they were convicted, that is, that defendants' criminal intent existed individually with respect to each of the 29 films, and that because any one of the 29 films could have been the subject matter of merely one prosecution and conviction without introducing the remaining 28 films into evidence, therefore each of the 29 fines represented punishment for different behavioral incidents which fell under the same statute.

The comment of the Advisory Committee on Revision of the Criminal Law on § 609.035 states in part (40 M. S. A. p. 58):

"As drawn, the recommended section will not prevent a single indictment from charging several offenses arising out of the same conduct and obtaining convictions for any or all of them, but a sentence may be imposed for only one of them which may be for the highest sentence which any one of them carries." [3]

---

[3] Comment by Professor Maynard E. Pirsig, reporter for the Advisory Committee on Revision of the Criminal Law, reads in part as follows (40 M. S. A. p. 58): "* * * But sometimes, a single incident of criminal behavior involves a multiplicity of violations permitting a series of prosecutions and of sentences which exaggerate the criminality of the behavior involved and, in a sense, defeat the policy underlying the constitutional protection against double jeopardy. The intent of the section is to meet these objections by limiting the sentence to the maximum permitted for the most serious crime committed. In determining, there-

An analysis of several Minnesota cases dealing with § 609.035 is helpful in arriving at a resolution of the issue here.

In City of Bloomington v. Kossow, 269 Minn. 467, 131 N. W. 2d 206 (1964), after the defendant had been convicted of violating an ordinance prohibiting public drunkenness, he obtained a writ of prohibition to prevent prosecution for driving while under the influence of intoxicating liquor in violation of a state statute. This court, Mr. Chief Justice Knutson writing the opinion, held that a conviction of drunkenness under the municipal ordinance did not bar prosecution of the defendant under the state statute for drunken driving, even though the defendant's conduct was the subject of both complaints. In interpreting § 609.035, Mr. Chief Justice Knutson said (269 Minn. 469, 131 N. W. 2d 208):

"* * * By the express language of the statute itself, all offenses arising out of a person's conduct may be included in one prosecution by stating them in separate counts. There is nothing that bars conviction of several offenses arising out of the same conduct, but the statute does prohibit the imposition of punishment for more than one offense in such a situation."

In State v. Johnson, 273 Minn. 394, 141 N. W. 2d 517 (1966), defendant was charged with driving while intoxicated and driving over the centerline of a roadway. Defendant pled guilty to the latter charge, and when sentencing was deferred by the trial court until the "driving under the influence" charge was disposed of, defendant moved for dismissal of that charge. Upon denial of that motion he obtained a writ of prohibition from this court, claiming that § 609.035 protected him from further prosecution after his guilty plea was received on the charge of driving over the centerline. This court, in an opinion by Mr. Justice Rogosheske, held that the defendant, by requesting arraignment and

fore, whether two or more crimes fall within this policy, among the factors to be considered are the singleness of purpose of the defendant and the unity of time and of place of the behavior."

pleading guilty to the first charge, had waived his right under § 609.035 to protection from multiple prosecution, but that his punishment must be limited to a single sentence as prescribed by § 609.035. We discussed the applicability of § 609.035, saying (273 Minn. 398, 141 N. W. 2d 521):

"* * * Thus the instances in which the application of § 609.035 may be sought are narrowed to those where a 'person's conduct' results in the commission of two or more separate or nonincluded offenses. Moreover, it must be kept in mind that the type of conduct specified must involve a multiplicity of violations rather than a single violation resulting from a single criminal act."

This court further stated in the Johnson case (273 Minn. 404, 141 N. W. 2d 525):

"* * * [A]part from the factors of time and place, the essential ingredient of any test is *whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective.*"

In State v. Reiland, 274 Minn. 121, 142 N. W. 2d 635 (1966), the defendant was charged with driving after revocation of his license, to which he pled guilty. He was later charged with criminal negligence when it developed that on the same day he was apprehended he had struck and killed a pedestrian with his car. Defendant moved to dismiss the complaint charging criminal negligence on the ground that he was protected from further prosecution by § 609.035, and upon the court's denial of this motion, a writ of prohibition was obtained from this court. We discharged the writ. Citing State v. Johnson, *supra,* we stated (274 Minn. 123, 142 N. W. 2d 637):

"* * * While there is no necessity for reiterating the background, policy, and purpose of the statute [§ 609.035], it must be emphasized that it does prohibit multiple prosecutions as well as double punishment under circumstances where a 'person's

conduct' (by which is meant a 'single behavioral incident') results in violations of more than one criminal statute. Whether the violations result from a single behavioral incident depends upon the facts and circumstances of each case."

In determining that the protection afforded by § 609.035 did not apply to the defendant in the Reiland case, this court reasoned (274 Minn. 125, 142 N. W. 2d 638):

"'* * * Defendant's state of mind or error in judgment causing him to drive after revocation may be characterized as willfully defying a statute designed to punish drivers who have had their driver's license revoked. As such, it has no relationship to the conduct of operating and controlling a motor vehicle in a grossly negligent manner, either in cause or effect. The conduct constituting each offense is not the result of a single motivation directed toward a single goal but is essentially dissimilar and unrelated in both respects. Defendant is not being harassed by multiple prosecutions for offenses growing out of a single behavioral incident or out of the same transaction, but rather for two separate and distinct behavioral incidents. Accordingly, we hold that § 609.035 does not bar prosecution of the pending charge."

In accord with the reasoning of the Reiland case is State v. Murphy, 277 Minn. 355, 152 N. W. 2d 507 (1967); and in accord with State v. Johnson, *supra,* is State v. Gladden, 274 Minn. 533, 144 N. W. 2d 779 (1966).

Other recent Minnesota decisions are State ex rel. Stangvik v. Tahash, 281 Minn. 353, 161 N. W. 2d 667 (1968), wherein we concluded that multiple sentences were proper for separate crimes intentionally committed against more than one individual; State v. Shevchuk, 282 Minn. 182, 163 N. W. 2d 772 (1968), where this court affirmed the findings that the defendants' actions in terrorizing and robbing a victim were a divisible series of incidents rather than a "single behavioral incident"; and State v. Boucher, 286 Minn. 475, 176 N. W. 2d 624 (1970), where-

in the defendant's conviction of reckless driving in the Roseville municipal court was held to bar prosecution by the city of St. Paul on a similar charge. There the defendant had driven at speeds in excess of 90 miles per hour in an effort to escape the Roseville police, after driving through a red light, and was issued citations for reckless driving by three different municipalities. This court reversed defendant's conviction in the St. Paul municipal court, stating (286 Minn. 479, 176 N. W. 2d 627):

"In light of the language of the statute and these prior decisions, we are compelled to hold that the conduct of defendant which commenced at Highway No. 36 and Victoria in Roseville and terminated near the intersection of Marshall and Cretin in St. Paul constituted one behavioral incident. The reckless driving which occurred in each of the municipalities through which he traveled occurred at substantially the same time and place and arose out of a continuous and uninterrupted course of conduct on the part of defendant. It appears inescapable from the stipulation that he was driving continuously during this time at high and excessive rates of speed heedless of traffic control devices in a continuous intensive effort to evade the police officers who were pursuing him. We must infer from the stipulation that at no stage was there any interruption or surcease in the reckless operation of the vehicle. Defendant had but one state of mind, i. e., to avoid being arrested by the police officers who were pursuing him and whom he was attempting to elude. If we are to abide by the purpose and objectives of the statute and its meaning as defined by our earlier decisions, we must hold, although we might prefer otherwise, that defendant's conduct was one continuous indivisible course of action motivated by a unity of purpose constituting reckless driving within the meaning of § 169.13, subd. 1. Since he has been convicted and punished in a court of competent jurisdiction, the former prosecution bars the present prosecution."

The latest decision construing § 609.035 is State v. Corning, 289 Minn. 382, 184 N. W. 2d 603 (1971), holding acquittal of a

charge of failure to leave required information at the scene of an accident barred prosecution for driving while under the influence of intoxicating liquor.

In light of the foregoing decisions interpreting § 609.035, we must conclude that the trial court erred in imposing a fine for each of the 29 convictions and we order modification of the judgments in that respect to a limit of $100 as to each defendant.

Convictions affirmed, subject to modification of sentences in accordance with this opinion.

OTIS, JUSTICE (dissenting).

1. Recognizing that the convictions in this case cannot be sustained unless the facts bring it within one of the exceptions set forth in Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. 2d 515 (1967), the majority holds that there was evidence of pandering which sets the material aside from that protected under the Redrup rule. It states that the selection of material placed in the windows together with the signs "YOU CANNOT BE ARRESTED while Shopping our Store" and "ADULTS ONLY, You must be 18 to Enter Store" constitute pandering as a matter of law.

The majority raises for the first time an issue of law and fact which it holds to be decisive notwithstanding it was not charged in the complaint, not submitted to the jury, not mentioned in the court's sentence, not raised in the appellate briefs, and not argued either to the trial court or this court. It seems too elementary to require discussion that appellate courts will not consider for the first time on appeal issues in a criminal case which were not submitted to the trial court. Here, without citing any authority, an appellate court takes the unprecedented step of acting as a factfinder to provide an essential element of the offense which defendants were denied their constitutional right to have a jury determine. It hardly seems necessary to debate the question of whether in a criminal case the defendant is entitled to notice and an opportunity to be heard with respect to an accusation involving critical facts on which his guilt or innocence de-

pends. Nevertheless, we now hold that the appellate court may sua sponte dispose of a criminal matter and sustain a conviction where the issue on which the decision turns was not charged, litigated, submitted to the court or jury, or raised on appeal. This, in my opinion, is a denial of due process.

2. Even if the question had been litigated, it is clear from a reading of the Redrup case and its progeny that the *facts in the case before us do not warrant a conviction based on pandering.*[1]

The majority bases its decision on the fact that some 70 paperback novels dealing with sex and an assortment of "girlie" magazines were displayed in the front window next to the sidewalk. None of the 29 films found to be obscene were thus displayed. The officer testified he seized 19 reels from the storeroom, 29 from a wall shelf in the front of the store, and 6 from a window-ledge shelf. However, the latter apparently could not be observed from the street.

The Ginzburg case held that the circumstances of presentation and dissemination of material are relevant to a finding of obscenity and that "in close cases evidence of pandering may be probative." 383 U. S. 463, 474, 86 S. Ct. 942, 949, 16 L. ed. 2d 31, 40. It is significant, however, that in Ginzburg the court was

---

[1] At the time State v. Hoyt, 286 Minn. 92, 174 N. W. 2d 700 (1970), was released, 20 convictions for obscenity had been summarily reversed on authority of the Redrup decision. To that list may now be added the following: Cain v. Commonwealth, 437 S. W. 2d 769 (Ky. 1969), reversed sub nom. Cain v. Kentucky, 397 U. S. 319, 90 S. Ct. 1110, 25 L. ed. 2d 334 (1970); Grand Rapids City Attorney v. Bloss, 17 Mich. App. 318, 169 N. W. 2d 367 (1968), reversed sub nom. Bloss v. Dykema, 398 U. S. 278, 90 S. Ct. 1727, 26 L. ed. 2d 230 (1970); Walker v. Ohio (Ohio Supreme Court), 398 U. S. 434, 90 S. Ct. 1884, 26 L. ed. 2d 385 (1970); State v. Hoyt, *supra,* reversed sub nom. Hoyt v. Minnesota, 399 U. S. 524, 90 S. Ct. 2241, 26 L. ed. 2d 782 (1970); Childs v. State of Oregon, 300 F. Supp. 649 (D. Ore. 1969), 401 U. S. 1006, 91 S. Ct. 1248, 28 L. ed. 2d 542 (1971); People v. Bloss, 18 Mich. App. 410, 171 N. W. 2d 455 (1969), reversed sub nom. Bloss v. Michigan, 402 U. S. 938, 91 S. Ct. 1615, 29 L. ed. 2d 106 (1971).

dealing with a publisher who widely and indiscriminately solicited sales of obscene matter with several million circulars in advertisements permeated by "the leer of the sensualist." 383 U. S. 468, 86 S. Ct. 946, 16 L. ed. 2d 37. We are not here dealing with mailed material and defendants are retailers.

Redrup reversed three obscenity convictions because (386 U. S. 769, 87 S. Ct. 1415, 18 L. ed. 2d 517) none of them involved sales to juveniles; the publications were not obtrusive to the point of assault upon individual privacy; and there was no evidence of the sort of "pandering" which the court found significant in Ginzburg v. United States, *supra*. The United States Supreme Court has made it clear that the rules applied in Ginzburg are now subject to the limitations set forth in Redrup.

The United States Court of Appeals in United States v. Baranov, 418 F. 2d 1051 (9 Cir. 1969), reversed an obscenity conviction based on pandering and in so doing thoroughly considered all of the Supreme Court opinions which have dealt with that subject since the Ginzburg decision. Felton v. City of Pensacola, 200 So. 2d 842 (Fla. App. 1967), brought to the United States Supreme Court for review an obscenity conviction where nudist magazines were seized from the defendant's news stand. The Florida Court of Appeals held the defendant guilty of pandering, and the United States Supreme Court reversed. Felton v. City of Pensacola, 390 U. S. 340, 88 S. Ct. 1098, 19 L. ed. 2d 1220 (1968). In an appeal in a proceeding for the confiscation of certain books, the Supreme Court of Kansas sustained a determination the books were obscene. State ex rel. Londerholm v. A Quantity of Copies of Books, 197 Kan. 306, 416 P. 2d 703 (1966). Relying on the manner of presentation as evidence of the obscenity of the books, the Kansas court referred to "lurid illustrated covers * * * blatantly pointing up the strong sex. * * * Here that packaging strongly emphasizes the prurient interest as well as affrontery to accepted standards in sexual matters * * *. * * * [The books] brazenly proclaim the motive in their creation and exploitation." 197 Kan. 313, 416 P. 2d

709. The judgment was reversed summarily by the United States Supreme Court on the authority of Redrup in A Quantity of Copies of Books v. Kansas, 388 U. S. 452, 87 S. Ct. 2104, 18 L. ed. 2d 1314 (1967).

Two subsequent decisions are significant. Bloss v. Dykema, 398 U. S. 278, 90 S. Ct. 1727, 26 L. ed. 2d 230 (1970); and Childs v. Oregon, 401 U. S. 1006, 91 S. Ct. 1248, 28 L. ed. 2d 542 (1971). Both deal with pandering and both reverse state court decisions by reliance on Redrup only. The Michigan Court of Appeals, with two judges dissenting in part, held in Grand Rapids City Attorney v. Bloss, 17 Mich. App. 318, 169 N. W. 2d 367 (1969), that evidence of pandering justified seizure and destruction of certain magazines. There, some of the material found to be obscene was displayed in a theater lobby and some could be seen from the outside of a bookstore. The trial court found, among other things, that theater patrons were subjected to "trailers" or commercial advertising on the screen. Merchandise portraying nude men and women was prominently displayed on three walls of the bookstore. "* * * [T]he cover of each magazine portrays sex in some lurid, morbid, or enticing manner so as to invite further examination of its contents." 17 Mich. App. 333, 169 N. W. 2d 373. The trial court then concluded that the material was advertised and sold in a manner which constituted pandering. The two dissenters expressly took issue with the finding of pandering. The United States Supreme Court reversed. Bloss v. Dykema, *supra.*

In the Childs case the defendant was convicted of selling obscene material, a book, openly displayed on its racks, dealing with lesbians. The Supreme Court of Oregon affirmed the conviction in State v. Childs, 252 Ore. 91, 96, 447 P. 2d 304, 306 (1968). Having exhausted state remedies, the defendant secured a writ of habeas corpus in the Federal court. There, citing Redrup, the trial court held the display did not constitute evidence of pandering and ordered the defendant discharged. Childs v. State of Oregon, 300 F. Supp. 649 (D. Ore. 1969). The United

States Court of Appeals in Childs v. State of Oregon, 431 F. 2d 272 (9 Cir. 1970), reversed. That Court held that Ginzburg applied, that the book was deliberately represented as erotically arousing, and was openly exhibited as a part of defendant's stock of "dirtier books." One of the three judges dissented. The United States Supreme Court reversed, citing only Redrup. Childs v. Oregon, 401 U. S. 1006, 91 S. Ct. 1248, 28 L. ed. 2d 542 (1971).

The majority opinion cites no case permitting a jury to find pandering in the context of this matter. The authorities cited reach a contrary conclusion. We are bound by the decisions of the United States Supreme Court on constitutional matters and may not blind ourselves to the rules which have emerged from their opinions. However revolting we may find the material before us, we have a duty to reverse.

ROGOSHESKE, JUSTICE (dissenting).

While in obedience to decisions of the United States Supreme Court I am persuaded to join the dissent of my brother Otis, I feel compelled to express the primary basis for my dismay concerning the disposition of this appeal. I find it impossible to accept the proposition that an appellate court can sustain a conviction in a criminal case upon a determination of an issue that was not litigated.

It was never claimed that defendants were pandering obscene materials. As the dissent points out, no attempt whatsoever to prove such conduct was undertaken or urged as a basis for conviction at any stage of this proceeding, if indeed the necessity therefor ever occurred to the prosecution. What this amounts to in my opinion is to declare that the prosecution unwittingly proved a criminal offense without notice to defendants of an essential element of the offense engrafted upon our statute by Redrup and, if such notice is not arguably required, without affording defendants an opportunity to litigate the issue. It seems obvious to me that such procedure is wholly inconsistent with due process and cannot be approved in any criminal case.

386

PETERSON, JUSTICE (dissenting).

I join in the dissents of Mr. Justice Otis and Mr. Justice Rogosheske.