GRAND RAPIDS CITY ATTORNEY *v.* BLOSS
O<small>PINION OF</small> H<small>OLBROOK</small>, J.

1. C<small>ONSTITUTIONAL</small> L<small>AW</small>—O<small>BSCENITY</small>—E<small>QUITY</small>—S<small>ALE OF</small> O<small>BSCENE</small>
M<small>ATTER</small>—I<small>NJUNCTION</small>.

> *Statute permitting the city attorney of a city in which allegedly*
> *obscene material is sold to bring an action against the seller*
> *to enjoin such sale or distribution, to obtain a preliminary*
> *injunction suspending such sale or distribution pending out-*
> *come of the litigation, and to have the sheriff seize and destroy*
> *material found to be obscene* held, *not an unconstitutional de-*
> *nial of freedom of expression where defendant is given a trial*
> *on the merits within one day after joinder of issue and a*
> *decision is rendered within two days after trial (CLS 1961,*
> *§ 600.2938).*

2. C<small>ONSTITUTIONAL</small> L<small>AW</small>—F<small>REEDOM OF</small> E<small>XPRESSION</small>—O<small>BSCENITY</small>.

> *Obscenity is not within the area of constitutionally protected*
> *speech or press.*

3. W<small>ORDS AND</small> P<small>HRASES</small>—O<small>BSCENITY</small>—D<small>EFINITION</small>.

> *Obscene material is material whose dominant theme, to the av-*
> *erage person applying contemporary community standards,*
> *deals with sex in a manner appealing to prurient interest.*

4. C<small>ONSTITUTIONAL</small> L<small>AW</small>—D<small>UE</small> P<small>ROCESS</small>—S<small>TATUTES</small>—V<small>AGUENESS</small>.

> *Lack of precision in the terminology of a statute is not itself*
> *offensive to the requirements of due process; all that is re-*

---

R<small>EFERENCES FOR</small> P<small>OINTS IN</small> H<small>EADNOTES</small>

[1] 21 Am Jur 2d, Criminal Law § 377.
[2] 16 Am Jur 2d, Constitutional Law §§ 341, 345, 349.
[3, 6–8, 11–14] 33 Am Jur, Lewdness, Indecency and Obscenity § 4.
[4, 5] 16 Am Jur 2d, Constitutional Law § 552.
[9, 17] 33 Am Jur, Lewdness, Indecency and Obscenity §§ 9, 10.
[10] 47 Am Jur, Searches and Seizures §§ 6–8, 14–16.
[15] 16 Am Jur 2d, Constitutional Law § 349.
[16, 18] 33 Am Jur, Lewdness, Indecency and Obscenity §§ 4, 18, 20.

*quired is that the language convey sufficiently definite warn-
ing as to proscribed conduct when measured by common un-
derstanding and practice.*

5. CONSTITUTIONAL LAW—DUE PROCESS—STATUTES—VAGUENESS.

*Statute providing for injunctions against the sale and seizure
of "obscene, lewd, lascivious, filthy, indecent or disgusting"
material is not unconstitutionally vague (CLS 1961, § 600.2938).*

6. OBSCENITY—ELEMENTS.

*Material is obscene if the dominant theme taken as a whole
appeals to prurient interest in sex, if it is patently offensive
because it affronts contemporary community standards re-
lating to the description or representation of sexual matters,
and if the material is utterly without redeeming social value.*

7. OBSCENITY—ELEMENTS—PRURIENT APPEAL—DEVIANT GROUP—DIS-
TRIBUTION OF MATERIAL.

*The prurient appeal requirement of the obscenity test is met if
the material in question taken as a whole appeals to the
prurient interest of a certain clearly defined deviant sexual
group, and the material is designed for and primarily dissemi-
nated to that group rather than to the public at large.*

8. OBSCENITY — DETERMINATION — RELEVANT FACTORS — CIRCUM-
STANCES OF DISTRIBUTION.

*The background of the circumstances of production, sale, and
publicity of materials are legitimate factors to consider in
determining whether or not material is obscene.*

9. OBSCENITY—PHOTOGRAPH—NUDE INDIVIDUALS.

*Trial court determination that magazines featuring photographs
of females in suggestive poses, with the genital area fully
exposed and any clothing worn tending to accentuate the
genital area, are obscene* held, *proper.*

10. CONSTITUTIONAL LAW—SEARCH AND SEIZURE—OBSCENE MATERIAL.

*The fact that certain publications were named in a complaint
that sought an injunction to prevent distribution of allegedly
obscene material does not permit a seizure of that material
without a search warrant at the time the complaint is served
on the defendant; therefore publications seized by officers at
defendant's book store at the time the officers were there to
serve a copy of the complaint and temporary restraining order
in an action against defendant pursuant to statute were il-
legally seized and were improperly admitted in evidence at*

the trial, because they were not seized pursuant to a proper search warrant or contemporaneously with a lawful arrest (CLS 1961, § 600.2938).

CONCURRING OPINION
DANHOF, J.

11. OBSCENITY — TEST — CONTEMPORARY COMMUNITY STANDARDS — TRIAL COURT — REVIEW BY APPELLATE COURT.

*It should be borne in mind by courts reviewing obscenity decisions that the trial court is in the best position to be aware of what contemporary community standards are in the community in question.*

12. OBSCENITY—ELEMENTS—PANDERING.

*Publications sold from a store which has painted windows making it impossible to see inside, which admits only people at least 18 years of age, and which charges one dollar admission is not engaged in pandering which might contribute to a finding that the material sold is obscene.*

13. OBSCENITY—ELEMENTS—PANDERING.

*It is not necessary to a finding of obscenity that elements of pandering be present.*

CONCURRING IN PART AND DISSENTING IN PART
LEVIN, J.

14. CONSTITUTIONAL LAW—OSCENITY—DEFINITION.

*The phrase "obscene in the constitutional sense" is a term of art coined by the United States Supreme Court and its meaning is more restrictive than obscenity in the ordinary sense of the word.*

15. CONSTITUTIONAL LAW—OBSCENITY.

*Publications are to be deemed obscene in the constitutional sense only in extraordinary cases.*

16. OBSCENITY—METHOD OF DETERMINATION—COMPARISON OF MATERIAL.

*The Court of Appeals should, when dealing with an obscenity issue, attempt to make its determination through a comparison of the materials involved with those passed upon by controlling authority in other cases rather than attempting to arrive at its own definitional statement of obscenity.*

17. OBSCENITY—PHOTOGRAPHS—NUDE PERSONS.

*Photographs of nude persons, with the genital area fully exposed, are not obscene in the constitutional sense.*

18. OBSCENITY—ELEMENTS—PANDERING.

*Store selling allegedly obscene matter which has blacked out its windows, making it impossible to see inside, which admits only people at least 18 years of age, which charges one dollar admission, and which advertises at a neighboring adult-only movie house is not engaged in pandering.*

Appeal from Kent, John T. Letts, J.   Submitted Division 3 February 11, 1969, at Grand Rapids. (Docket No. 5,365.)   Decided May 9, 1969.   Leave to appeal denied December 23, 1969.   See 383 Mich 754.   Reversed by United States Supreme Court June 1, 1970.

Complaint by Steven L. Dykema, city attorney of the city of Grand Rapids, against Floyd Bloss and The Kent County Theater Corporation, a Michigan corporation, their officers, agents, and employees to enjoin the sale of certain allegedly obscene publications and for the seizure and destruction of those publications.   Judgment for plaintiff.   Defendant's motion to stay that portion of the judgment dealing with seizure and destruction pending appeal granted. Defendant appeals.   Judgment modified and affirmed.

*Dutchess, Mika, Miles, Meyers & Beckett* and *James R. Brown,* for plaintiff.

*John W. Piggott,* for defendants.

BEFORE: LEVIN, P. J., and HOLBROOK and DANHOF, JJ.

HOLBROOK, J.   This cause was commenced March 7, 1968, by the city attorney of the city of Grand Rapids, Michigan, requesting a permanent injunc-

tion restraining Floyd Bloss and the Kent County Theater Corporation, a Michigan corporation, defendants and their officers, agents, and employees from the further sale, distribution and acquisition or possession for sale of certain allegedly obscene booklets or magazines submitted as exhibits A through D with the complaint and exhibits 1 through 15 and exhibit 19 submitted with amended complaints. Further relief was requested for their seizure and destruction.

The cause was heard on March 15 and 16, 1968, at the request of counsel for defendants and stipulation by plaintiff's counsel. On March 18, 1968, the Honorable John T. Letts, presiding judge, filed his written opinion, and in accord with the opinion on the same day a judgment was filed holding all the booklets and magazines in question obscene and enjoining their further sale, distribution and acquisition or possession for sale by defendants. It was also ordered that the copies of these booklets in possession of defendants be delivered to the sheriff and destroyed. The execution of this order was stayed at the request of defendants' counsel. The defendants appeal and raise 2 questions for consideration by this Court, *viz:*

(1) Did the trial court err in determining exhibits 1 through 15 and exhibit 19 obscene?

(2) Did the trial court err in admitting exhibit 19 comprising several booklets taken from defendants' book store by police officers upon authority of and in the presence of the city attorney when they were there for the purpose of serving legal process and a temporary restraining order on defendants and their agents?

This action is authorized under CLS 1961, § 600-.2938 (Stat Ann 1962 Rev § 27A.2938) which provides in pertinent part as follows:

"(1) The chief executive or legal office of any city, village or charter township or prosecuting attorney of the county may institute and maintain an action in the circuit court against any person, firm or corporation to enjoin and prevent the sale or further sale or the distribution or further distribution or the acquisition or possession of any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure or image or any written or printed matter of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose. * * *

"(4) A preliminary injunction or restraining order may be issued upon or at any time after the filing of the complaint. The person, firm or corporation sought to be enjoined is entitled to a trial of the issues within 1 day after joinder of issue and a decision shall be rendered by the court within 2 days of the conclusion of the trial.

"(5) If a final order or judgment of injunction is entered in favor of such officer of the city, village or charter township and against the person, firm or corporation sought to be enjoined, the final order or judgment shall contain a provision directing the person, firm or corporation to surrender to the sheriff of the county in which the action was brought any of the matter described in (1) and the sheriff shall be directed to seize and destroy the same."

Defendants cannot contest the legality of this proceeding under the foregoing statute permitting an injunction to issue and the destruction of copies of the booklets found to be obscene by the court, because in the case of *Kingsley Books, Inc.* v. *Brown* (1957), 354 US 436 (77 S Ct 1325, 1 L Ed 2d 1469), a nearly identical New York State statute was upheld in its entirety as constitutional.

It appears in the facts that the plaintiff is the city attorney of the city of Grand Rapids. Floyd Bloss, defendant, is the owner of the Capri Book Store and Library and is also the owner of the corporate defendant that operates the Capri Theater. In effect he was responsible for both the operation of the Capri Theater and the Capri Book Store and Library. The theater shows adult movies and on occasion it advertises and permits admission without charge. There was consistently shown on the screen at the theater a trailer advertising the Capri Book Store and Library located about a block away. The defendant also maintained in the theater an advertising display for free inspection of the type of material and books for sale at the book store. Some of the booklets found by the trial court to have been obscene were in this display.

All exhibits found obscene by the court except exhibit 19 were purchased from the Capri Book Store by witnesses who testified at the trial for plaintiff. The purchase price of these booklets was tremendously in excess of the cost of similar sized conventional booklets or magazines. The booklets comprising exhibit 19 were duplicates of some of exhibits 1 through 15 and other different booklets. These were taken from defendants' book store by the officers and city attorney when they went to the book store to serve defendants and their agents with legal process.

The entrance to the Capri Book Store and Library is in an alcove shared by a branch office of the Secretary of State. Certain of the booklets in the book store can be viewed from the outside.

The plaintiff and defendants have cited in their briefs a great number of cases in support of their positions. They are too numerous to be dealt with individually herein. There are certain cases that are basic to the law of obscenity and essential to be con-

sidered and followed in making a correct decision in the instant case.

The cases of *Roth* v. *United States* and *Alberts* v. *California* (1957), 354 US 476 (77 S Ct 1304, 1 L Ed 2d 1498) were decided together. One required the construction of a federal statute (in *Roth*) providing that obscene, lewd, lascivious, filthy, or indecent material is not mailable and that whoever knowingly deposits such material for mailing or delivery is criminally punishable. The California statute (in *Alberts*) makes criminally punishable every person who wilfully and lewdly writes or otherwise produces obscene or indecent material, or who writes or otherwise produces any notice or advertisement of any such material. Both defendants were prosecuted, convicted and appealed their convictions finally to the United States Supreme Court.

In speaking for the majority of the Court, Mr. Justice Brennan stated as follows (pp 481–492):

"The dispositive question is whether obscenity is utterance within the area of protected speech and press. Although this is the first time the question has been squarely presented to this Court, either under the First Amendment or under the Fourteenth Amendment, expressions found in numerous opinions indicate that this Court has always assumed that obscenity is not protected by the freedoms of speech and press. [Cases cited.]

"The guaranties of freedom of expression in effect in 10 of the 14 States which by 1792 had ratified the Constitution, gave no absolute protection for every utterance. Thirteen of the 14 States provided for the prosecution of libel, and all of those States made either blasphemy or profanity, or both, statutory crimes. As early as 1712, Massachusetts made it criminal to publish 'any filthy, obscene, or profane song, pamphlet, libel or mock sermon' in imitation or mimicking of religious services. Acts and Laws

of the Province of Mass. Bay, c. CV, § 8 (1712), Mass. Bay Colony Charters & Laws 399 (1814). Thus, profanity and obscenity were related offenses.

"In light of this history it is apparent that the unconditional phrasing of the First Amendment was not intended to protect every utterance. This phrasing did not prevent this Court from concluding that libelous utterances are not within the area of constitutionally protected speech. *Beauharnais* v. *Illinois* (1952), 343 US 250, 266 (72 S Ct 725, 96 L Ed 919). At the time of the adoption of the First Amendment, obscenity law was not as fully developed as libel law, but there is sufficiently contemporaneous evidence to show that obscenity, too, was outside the protection intended for speech and press.

"The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. This objective was made explicit as early as 1774 in a letter of the Continental Congress to the inhabitants of Quebec:

" 'The last right we shall mention, regards the freedom of the press. The importance of this consists, besides the advancement of truth, science, morality, and arts in general, in its diffusion of liberal sentiments on the administration of Government, its ready communication of thoughts between subjects, and its consequential promotion of union among them, whereby oppressive officers are shamed or intimidated, into more honourable and just modes of conducting affairs.' 1 Journals of the Continental Congress 108 (1774).

"All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming

social importance. This rejection for that reason is mirrored in the universal judgment that obscenity should be restrained, reflected in the international agreement of over 50 nations, in the obscenity laws of all of the 48 States, and in the 20 obscenity laws enacted by the Congress from 1842 to 1956. This is the same judgment expressed by this Court in *Chaplinsky* v. *New Hampshire* (1942), 315 US 568, 571, 572 (62 S Ct 766, 86 L Ed 1031, 1035).

" '* * * There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. *These include the lewd and obscene.* * * * *It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.* * * *' (Emphasis added.)

"We hold that obscenity is not within the area of constitutionally protected speech or press.

"It is strenuously urged that these obscenity statutes offend the constitutional guaranties because they punish incitation to impure sexual *thoughts,* not shown to be related to any overt antisocial conduct which is or may be incited in the persons stimulated to such *thoughts.* In *Roth,* the trial judge instructed the jury: 'The words "obscene, lewd and lascivious" as used in the law, signify that form of immorality which has relation to sexual impurity and has a tendency to excite lustful *thoughts.*' (Emphasis added.) In *Alberts,* the trial judge applied the test laid down in *People* v. *Wepplo* (1947), 78 Cal App 2d Supp 959 (178 P2d 853), namely, whether the material has 'a substantial tendency to deprave or corrupt its readers by inciting lascivious *thoughts* or arousing lustful desires.' (Emphasis added.) It is insisted that the constitutional guaranties are violated because convictions may be had without proof

either that obscene material will perceptibly create a clear and present danger of antisocial conduct, or will probably induce its recipients to such conduct. But, in light of our holding that obscenity is not protected speech, the complete answer to this argument is in the holding of this Court in *Beauharnais* v. *Illinois, supra* (343 US at 266):

" 'Libelous utterances not being within the area of constitutionally protected speech, it is unnecessary, either for us or for the State courts to consider the issues behind the phrase "clear and present danger." Certainly no one would contend that obscene speech, for example, may be punished only upon a showing of such circumstances. Libel, as we have seen, is in the same class.'

"However, sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest.  *  *  *

"The early leading standard of obscenity allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons. *Regina* v. *Hicklin* (1868), LR 3 QB 360. Some American courts adopted this standard but later decisions have rejected it and substituted this test: whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. The *Hicklin* test, judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass material legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press. On the other hand, the substituted standard provides safeguards adequate to withstand the charge of constitutional infirmity.  *  *  *

"It is argued that the statutes do not provide reasonably ascertainable standards of guilt and therefore violate the constitutional requirements of due process. *Winters* v. *New York* (1948), 333 US 507 (68 S Ct 665, 92 L Ed 840). The Federal obscenity

statute makes punishable the mailing of material that is 'obscene, lewd, lascivious, or filthy * * * or other publication of an indecent character.' The California statute makes punishable, *inter alia,* the keeping for sale or advertising material that is 'obscene or indecent.' The thrust of the argument is that these words are not sufficiently precise because they do not mean the same thing to all people, all the time, everywhere.

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * * The Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. * * *' *United States* v. *Petrillo* (1947), 332 US 1, 7, 8 (67 S Ct 1538, 91 L Ed 1877, 1883). These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '* * * boundaries sufficiently distinct for judges and juries fairly to administer the law. * * *' That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." (Emphasis supplied by Supreme Court.)

In the case of *Memoirs* v. *Massachusetts* (1966), 383 US 413 (86 S Ct 975, 16 L Ed 2d 1), obscenity was further defined as follows (p 418):

"We defined obscenity in *Roth* in the following terms: 'Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 US, at p 489, 1 L Ed 2d at 1509. Under this definition, as elaborated in subse-

quent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

In the case of *Mishkin* v. *New York* (1966), 383 US 502 (86 S Ct 958, 16 L Ed 2d 56), *reh den* 384 US 934 (86 S Ct 1440, 16 L Ed 2d 535), pp 508, 509, the court enlarged the "average person" aspect of the test as to whether questioned material appeals to prurient interest, stating:

"Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. The reference to the 'average' or 'normal' person in *Roth,* 354 US, at 489, 490, 77 S Ct at 1311, 1 L Ed 2d at 1510) does not foreclose this holding. In regard to the prurient-appeal requirement, the concept of the 'average' or 'normal' person was employed in *Roth* to serve the essentially negative purpose of expressing our rejection of that aspect of the *Hicklin* test, *Regina* v. *Hicklin* (1868), LR 3 QB 360, that made the impact on the most susceptible person determinative."

In the case of *Ginzburg* v. *United States* (1966), 383 US 463 (86 S Ct 942, 16 L Ed 2d 31) *reh den* 384 US 934 (86 S Ct 1440, 16 L Ed 2d 536), it was further decided that the background of the circumstances of production, sale and publicity of the materials were legitimate factors in determining if the material is obscene, *i.e.,* (pp 465, 466):

"In the cases in which this Court has decided obscenity questions since *Roth,* it has regarded the materials as sufficient in themselves for the determination of the question. In the present case, however, the prosecution charged the offense in the context of the circumstances of production, sale, and publicity and assumed that, standing alone, the publications themselves might not be obscene. We agree that the question of obscenity may include consideration of the setting in which the publications were presented as an aid to determining the question of obscenity, and assume without deciding that the prosecution could not have succeeded otherwise. As in *Mishkin* v. *New York* (1966), 383 US 502 (86 S Ct 958, 16 L Ed 2d 56), and as did the courts below, 224 F Supp, at 134, 338 F2d, at 14, 15, we view the publications against a background of commercial exploitation of erotica solely for the sake of their prurient appeal. The record in that regard amply supports the decision of the trial judge that the mailing of all three publications offended the statute."

In *Ginzburg, supra,* there was evidence to show that the questioned publications were the stock in trade of "sordid business of pandering—'the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of * * * customers.'" The Court found such evidence "relevant in determining the ultimate question of obscenity," and in determining "whether social importance claimed for material in the courtroom was, in the circumstances, pretense or reality—whether it was the basis upon which it was traded in the marketplace or a spurious claim for litigation purposes." The Court further held that "where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be decisive in the determination of obscenity."

There are many other obscenity cases asserted to
be applicable to this case by both plaintiff and de-
fendants. Those cases are not helpful here because
the facts are not analogous or because the material
ruled upon is not specifically set forth with particu-
larity. This is true with reference to the case of
*Redrup* v. *New York* (1967), 386 US 767 (87 S Ct
1414, 18 L Ed 2d 515) cited and relied upon by the
defendants. This *per curiam* opinion as we read it
is confined to the facts and material therein ruled
upon.

. As long as our fundamental law recognizes that
obscene material is not protected under the First and
Fourteenth Amendments to the United States Con-
stitution, we are charged with the duty of enforcing
the State obscenity statutes in accordance with *Roth*
and *Alberts, supra,* and subsequent clear modifica-
tions as herein recited.

We deem it important to reiterate parts of the trial
judge's opinion, as follows:

"It is revealed that the patrons of the Capri The-
ater are subjected to various forms of advertising,
primarily 'trailers' or commercial advertising, on the
screen of the theater, informing said patrons to visit
the Capri Book Store & Library after the show. In
addition to said 'trailers', magazines of the type and
kind that are on sale at the Capri Book Store are
displayed in the lobby of the Capri Theater for ex-
amination by the patrons of the theater. The mag-
azines, including editions of 'Cover Girl', are dis-
played under a sign with the legend:
    " 'This product is available at the Capri Book
Store & Library at 303 S. Div.' (Exhibit 16)

"There was unrebutted testimony that the Capri
Book Store & Library does not possess, display or
sell standard, recognized periodicals. All merchan-
dise apparently treats of and deals with sex, both
male and female, both sexes in their nude state prom-

inently displayed on three walls on the covers of the magazines.

"Defendant Floyd Bloss admitted that he was generally familiar with the contents of the magazines which he had on display but could not read the print in one because it was in the Swedish language.

"The court finds, after listening to the testimony, that each magazine comprising an exhibit (Exhibits 1–15 and 19) in this case was prominently displayed on a magazine rack and the cover of each magazine portrays sex in some lurid, morbid or enticing manner so as to invite further examination of its contents. * * *

"Generally speaking, most of the magazines, especially the editions of 'Cover Girl' and 'Exciting,' are dominated by photographs of nude or near-nude women in various sexual poses. These photographs often depict: The model on a bed or a bed is part of the picture; the model is in an enticing or lewd position such as a position of sexual intercourse; the pubic area is bare and such clothing as the women wear tends to accentuate the focus on the pubic area, *i.e.* silk stockings and garter belt; the model's pose accentuates the pubic area, *i.e.* the vagina is open; the model removes her clothing in a series of pictures suggestively; properties such as beds, stools, veils, chairs and clothing are used in such a way as to heighten prurient interest. * * *

"Some of the magazines carry an editorial comment to the effect that they are art magazines, exclusively for use in furnishing serious artists and persons interested in art, who have some difficulty to find living models, with suitable photographs to be used as substitutes for drawing, painting and sculpturing. The court finds these claims are spurious and that the magazines involved are designed for and intended to be distributed to persons who may have a natural or prurient interest in pictures of nude women in various sexual poses.

"The court finds that the exhibits in question are patently offensive because each affronts contempo-

rary community standards relating to the description or representation of sexual matters regardless of whether a national, statewide or local community standard is applied in determining the 'contemporary community standards.' * * *

"This court adopts and follows the *'Roth* test' at least preliminarily, in arriving at a decision as to whether the exhibits before this court are obscene, *viz.,* whether to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest. *Roth* v. *United States, supra.* Under this definition, as elaborated in subsequent cases, three elements must coalesce: It must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. *Memoirs* v. *Massachusetts* (1966), 383 US 413 (86 S Ct 975, 16 L Ed 2d 1).

"In *United States* v. *25,000 Magazines, Entitled 'Revue'* (1966), 254 F Supp 1014, the following language is pertinent to this case:

" '(2) A. Not all photographs of nude women are obscene, even though the focus is on the breasts or the pubic area. Such photographs are not rendered obscene merely because the models are kneeling or lying down, or handling scarves, veils or other properties, or posed in unusual or vulgar positions, if their positions and expressions are not lewd or enticing. The inclusion of a nude man or men in such photographs does not render them obscene unless some type of sexual activity is depicted or suggested.

" '(3) B. Among the factors which may render such photographs obscene and which should be considered by enforcement authorities are: (1) that the model is on a bed or a bed is part of the picture; or (2) that the woman is in an enticing or lewd position; or (3) that the pubic area is bare and such

clothing as the woman wears tends to accentuate the focus on the pubic area; or (4) that the pose overaccentuates the pubic area; or (5) that the woman is removing her final garment suggestively; or (6) that properties are used in such a way as to heighten prurient interest; or (7) that a man in the picture has an erection or a partial erection or any type of sexual activity is suggested or depicted.'

" '(4) The dominant theme of the material taken as a whole must be considered, but one or more obscene photographs may heighten the prurient appeal of other photographs in such a magazine.'

"Under the standards so set forth this court finds each and every one of the exhibits (Exhibits 1–15 and 19) to be disgusting, morbid and obscene. Each of said exhibits meets each of the prescribed tests. This court finds no social redeeming value or purpose in the publication or distribution of any of the exhibits (1–15 and 19) and finds that the sole and only motivation to be the exploitation of sex in its most disgusting form.

"In addition to the determination of obscenity under the Roth test, this court finds that as to each of the said exhibits the defendant Floyd Bloss has been in the business of purveying both textual and graphic matter openly advertised to appeal to the erotic or prurient interest of his customers, that is, the sordid business of pandering as defined in *Ginzburg* v. *United States* (1966), 383 US 463 (86 S Ct 942, 16 L Ed 2d 31)."

The history of man reflects the fact that man's experiences in life and human conduct have been instrumental in the formulation of governments by free men and the writing of Constitutions to circumscribe the rights and privileges of its citizens. Although not written on the printed pages of such instruments it is imperative to acknowledge that rights and privileges contained therein, if truly to be operative for all men, require corresponding duties and

responsibilities on the part of all citizens. This is true in the case of our Federal Constitution which was built upon the morals of the Declaration of Independence. Our founding fathers accepted a moral code that recognized the harm that is brought about in the minds and hearts of men by being exposed to obscene publications. It is a generally accepted truth that as a man thinketh in his mind and heart, so is he. All acts of man, those which are good and legal or bad and criminal, are a direct result of the preceding thought in the mind, and the desire in the heart of the actor. Our founding fathers never proclaimed that the freedom of speech and press in the First Amendment of our Constitution was to shelter commercial exploitation of obscene publications for profit. Our forefathers have consistently adhered to this truth. A substantial majority of the present generation has freely chosen to adhere to this truth recognizing that the direction on the compass of morality set by our founding fathers has played a vital part in the proper moral development of the people. It is hoped that this will be true of all future generations.

The public cannot and should not be insulated from the facts of life; neither should they be promiscuously exposed, embraced, enticed, or urged by devious methods to read or view obscene publications which stir their thought to that which attacks their moral fiber; for if such is permitted, the result will be a response by those affected which is less than the minimum requirement for the preservation of a survivable healthy society. The morals of the citizens of a nation determine that nation's progress and the length of her very life. All thinking men realize that if we cherish our great nation, if we love her, and would have her prosper and be a great force for good in this world—it is imperative

that her ideals and morals be maintained on a high plane. The people's acceptance of this truth is demonstrated by the obscenity laws adopted by their duly elected representatives in the legislatures of all the states and the Congress of the United States down through the years. These laws should be applied to all citizens alike if the hopes and expectations of our founding fathers are to be realized in our present day, this the last one-third of the Twentieth Century.

After reviewing the evidence including exhibits 1 through 15, we can come to no other conclusion but to find that the trial court's determination is correct, *i.e.*, that the publications (exhibits 1 through 15)* are obscene as tested by federal standards under *Roth* and *Alberts, supra; Ginzburg, supra; Mishkin, supra; Memoirs* v. *Massachusetts, supra.* These obscene publications are not protected under the First and Fourteenth Amendments of the United States Constitution.

The second issue raised by defendants asserts that exhibit 19 comprising several magazines and booklets taken by the officers at defendants' book store when serving the process of the court and a temporary restraining order upon defendants and agents was inadmissible.

The process and temporary restraining order pertained to the specific enforcement of a statute permitting a permanent injunction to issue enjoining the sale of allegedly obscene material after a hearing on the merits and a judicial determination

---

* No. 1, *Pinned* No. 1; No. 2, *Jaybird Photographer* No. 9; No. 3, *Cover Girl* 16; No. 4, *Missie* No. 1; No. 5, *Cover Girl* 12; No. 6, *Cover Girl* 15; No. 7, *Cover Girl* 13; No. 8, *Exciting* 19; No. 9, *Exciting* 14; No. 10, *Exciting* 13; No. 11, *Exciting* 14; No. 12, *Cover Girl* 19; No. 13, *Cover Girl* 15; No. 14, *Cover Girl* 20; No. 15, *Gigi.* These exhibit numbers correspond to the exhibits as they were introduced at trial, not as they were itemized in complaints.

that the material was obscene. The process and the temporary restraining order did not permit a seizure of the material named in the complaint and certainly could not justify the seizure of other material not named. The case of *People* v. *Cattaneo* (1955), 6 Ill 2d 122 (126 NE2d 692) is dealt with by both counsel concerning the admission of exhibit 19. That case involved a seizure of gambling equipment when exhibited in open view in a public place. Printed matter is treated differently than gambling equipment because gambling equipment is contraband, *per se.* Printed matter may or may not be obscene based upon consideration of the entire contents of each publication. *Roth* and *Alberts, supra.* That there was a search is evidenced by the fact that of the material inspected about one-half was selected to be obscene in the opinion of the officers and the city attorney.

The search and seizure was not carried out pursuant to a search warrant nor was it contemporaneous with a lawful arrest. The statute under which plaintiff was proceeding did not provide for such a search and seizure. Under the circumstances, exhibit 19 was illegally seized and therefore not admissible.

The judgment of the circuit court is affirmed in all particulars except that exhibit 19 is deleted therefrom. No costs, a public question being involved.

DANHOF, J., (*concurring*). At the risk of being termed a fool for treading where those of higher stature might fear to tread, and being mindful that those concerned with the jurisprudence of obscenity will little note nor long remember what we state herein, it is nevertheless the duty of this Court to make a decision in this matter.

If there be those who have doubts concerning the fractionalized nature of the law as regards obscenity, we invite their attention to *Redrup* v. *New York* (1967), 386 US 767 (87 S Ct 1414, 18 L Ed 2d 515). We can only hope that ultimately the Supreme Court of the United States will hand down to those of us on a lower level more definitive guidelines than we now have. However, pending that clairvoyant guidance we must proceed on the basis of what we have.

This writer is of the opinion that the criteria set forth in *Roth* v. *United States* (1957), 354 US 476 (77 S Ct 1304, 1 L Ed 2d 1498) as supplemented by *Memoirs* v. *Massachusetts* (1966), 383 US 413 (86 S Ct 975, 16 L Ed 2d 1) are still controlling in the area of obscenity. The other cases which have dealt with this subject matter are merely interpretive of these basic propositions. Applying these criteria to the materials at hand*, I concur with my brother HOLBROOK in regard to exhibits 1 thru 15. In so doing I am mindful that counsel for the appellants has admitted that the publications in question are utterly without redeeming social value. The trial court, having applied the necessary criteria and being in a much more advantageous position to be aware of the contemporary community standards than we are, must be affirmed.

I do not find in this case the elements of "pandering" which were present in *Ginzburg* v. *United States* (1966), 383 US 463 (86 S Ct 942, 16 L Ed 2d 31), nor do I deem it necessary that these be present. Also, *Redrup* v. *New York, supra,* must stand on the facts of that case and it has not overruled *Roth* and *Memoirs, supra.*

---

* At least those who believe that nothing is obscene have the advantage of not being required to view the publications.

I concur also in the decision of my brother Hol-
brook as regards exhibit 19.

The judgment of the circuit court is affirmed
except as it relates to exhibit 19.

No costs, a public question being involved.


Levin, P. J., (*concurring in part and dissenting
in part*). I am in entire agreement with my col-
leagues that the seized magazines are vulgar, taw-
dry and unpleasant. The question before us, how-
ever, is not whether these odious magazines are
obscene in the ordinary sense of the word—they
clearly are—but whether they are obscene in the
constitutional sense. The phrase "obscene in the
constitutional sense" is a term of art[1] coined by
the United States Supreme Court[2] and, to the extent
it has defined that term, its definition is controlling
upon us. Neither my personal opinion nor, I re-
spectfully add, the opinions of my colleagues is
relevant where there is a controlling opinion from
the United States Supreme Court.

The United States Supreme Court has under-
taken the exposition and control of the development
of this area of the law. It has made it very clear
that only in extraordinary cases will publications
be deemed obscene in the constitutional sense.

---

[1] For non-art.

[2] *Redrup* v. *New York* (1967), 386 US 767 (87 S Ct 1414, 18 L Ed
2d 515), holding not obscene the paperback books *Lust Pool* and
*Shame Agent* and the magazines *High Heels, Spree, Gent, Swank,
Bachelor, Modern Man, Cavalcade, Gentleman, Ace* and *Sir*.

In *People* v. *Zerilli* (1969), 14 Mich App 513, our Court on the
authority of *Redrup* set aside Zerilli's conviction for selling typical
so-called "girlie" and "nudist" magazines. We declared that we were
"satisfied that the seized publications are of the same type held not
to be 'obscene in the constitutional sense' in *Redrup* v. *New York,
supra,* and in the cases collected in footnote 3 of *Ginsberg* v. *New
York* (1968), 390 US 629 (88 S Ct 1274, 20 L Ed 2d 195)." See
footnote 5, *infra,* for a listing of the cases cited in footnote 3 of
*Ginsberg* and additional United States Supreme Court decisions
decided on the authority of *Redrup*.

In an area of the law such as obscenity where decision turns on definitions and definitions are inevitably, hopelessly obscure, we have more to learn from a comparison of the materials involved in the case before us with those passed upon by controlling authority in other cases than from an attempt ourselves to explicate still another definitional statement.

Unlike *Memoirs*[3] and a number of other pre-*Redrup* opinions of the United States Supreme Court,[4] the opinion in *Redrup,* decided in 1967, bears the signatures of a majority (7 of the 9 justices) of the United States Supreme Court. Subsequent decisions of the United States Supreme Court clearly demonstrate that *Redrup* cannot be dismissed, as my colleagues would, as an isolated decision to be confined to its facts. On the *authority* of *Redrup* the United States Supreme Court has reversed 19 decisions of lower Federal and State courts.[5]

---

[3] *Memoirs* v. *Massachusetts* (1966), 383 US 413 (86 S Ct 975, 16 L Ed 2d 1).

[4] See, *e.g., Manual Enterprises* v. *Day* (1962), 370 US 478 (82 S Ct 1432, 8 L Ed 2d 639); *Jacobellis* v. *Ohio* (1964), 378 US 184 (84 S Ct 1676, 12 L Ed 2d 793); *Grove Press* v. *Gerstein* (1964), 378 US 577 (84 S Ct 1909, 12 L Ed 2d 1035); *Tralins* v. *Gerstein* (1964), 378 US 576 (84 S Ct 1903, 12 L Ed 2d 1033).

[5] *Keney* v. *New York* (1967), 388 US 440 (87 S Ct 2091, 18 L Ed 2d 1302); *Friedman* v. *New York* (1967), 388 US 441 (87 S Ct 2091, 18 L Ed 2d 1303); *Ratner* v. *California* (1967) 388 US 442 (87 S Ct 2092, 18 L Ed 2d 1304); *Cobert* v. *New York* (1967), 388 US 443 (87 S Ct 2092, 18 L Ed 2d 1305); *Sheperd* v. *New York* (1967), 388 US 444 (87 S Ct 2093, 18 L Ed 2d 1306); *Avansino* v. *New York* (1967), 388 US 446 (87 S Ct 2093, 18 L Ed 2d 1308); *Aday* v. *United States* (1967), 388 US 447 (87 S Ct 2095, 18 L Ed 2d 1309); *Books, Inc.* v. *United States* (1967), 388 US 449 (87 S Ct 2098, 18 L Ed 2d 1311); *A Quantity of Books* v. *Kansas* (1967), 388 US 452 (87 S Ct 2104, 18 L Ed 2d 1314; *Mazes* v. *Ohio* (1967), 388 US 453 (87 S Ct 2105, 18 L Ed 2d 1315); *Schackman* v. *California* (1967), 388 US 454 (87 S Ct 2107, 18 L Ed 2d 1316); *Conner* v. *City of Hammond* (1967), 389 US 48 (88 S Ct 234, 19 L Ed 2d 47); *Potomac News Co.* v. *United States* (1967), 389 US 47 (88 S Ct 233, 19 L Ed 2d 46); *Central Magazine Sales, Ltd.* v. *United States* (1967), 389 US 50 (88 S Ct 235, 19 L Ed 2d 49); *Chance* v. *California* (1967), 389 US 89 (88 S Ct 253, 19 L Ed 2d 256);

The seized magazines in the present case are of 2 types:

1) magazines showing frontal views of undressed men and, thus, portraying male genitals; and

2) magazines focusing on female genitals.

Sexual activity is not portrayed in any of the magazines.[6]

The United States Supreme Court has in a number of cases held that magazines containing photographs of male models completely nude, showing full views of their genitals, are not obscene. *Potomac News Company* v. *United States* (1967), 389 US 47 (88 S Ct 233, 19 L Ed 2d 46), *reversing* on the authority of *Redrup, United States* v. *56 Cartons Containing 19,500 Copies of a Magazine Entitled "Hellenic Sun"* (CA 4, 1967), 373 F2d 635; similarly *Central Magazine Sales, Ltd.* v. *United States* (1967), 389 US 50 (88 S Ct 235, 19 L Ed 2d 49), *reversing United States* v. *392 Copies of Magazine Entitled "Exclusive"* (CA 4, 1967), 373 F2d 633; *Manual Enterprises, Inc.* v. *Day* (1962), 370 US 478 (82 S Ct 1432, 8 L Ed 2d 639); *Felton* v. *City of Pensacola* (1968), 390 US 340 (88 S Ct 1098, 19 L Ed 2d 1220) *reversing* (Fla App, 1967), 200 So 2d 842; *Sunshine Book Co.* v. *Summerfield* (1958), 355 US 372 (78 S Ct 365, 2 L Ed 2d 352) *reversing* (CADC, 1957), 249 F2d 114 and (D DC, 1955), 128 F Supp 564.

The pictures in the magazines focusing on female genitals are most explicit. The models are shown

*I. M. Amusement Corp.* v. *Ohio* (1968), 389 US 573 (88 S Ct 690, 19 L Ed 2d 776); *Robert-Arthur Management Corp.* v. *Tennessee, ex rel. Canale* (1968), 389 US 578 (88 S Ct 691, 19 L Ed 2d 777); *Felton* v. *City of Pensacola* (1968), 390 US 340 (88 S Ct 1098, 19 L Ed 2d 1220); *Henry* v. *Louisiana* (1968) 392 US 655 (88 S Ct 2274, 20 L Ed 2d 1343).

6 See *People* v. *Noroff* (1967), 67 Cal 2d 791 (63 Cal Rptr 575, 433 P2d 479); *In re Panchot* (1968), 70 Cal 2d 105 (73 Cal Rptr 689, 448 P2d 385).

standing, sitting, kneeling and lying on their backs or stomachs and in many cases with their legs spread revealing the entire genital area.

In *Central Magazine Sales, Ltd.* v. *United States, supra,* 7 justices, 6 on the authority of *Redrup,* by a *per curiam* opinion reversed the decision of the United States Court of Appeals for the Fourth Circuit in *United States* v. *392 Copies of Magazine Entitled "Exclusive," supra.* The Court of Appeals described the magazine *Exclusive* thus (p 634):

"*Exclusive* is a collection of photographs of young women. In most of them, long stockings and garter belts are employed to frame the pubic area and to focus attention upon it. A suggestion of masochism is sought by the use in many of the pictures of chains binding the models' wrists and ankles. Some of the seated models, squarely facing the camera, have their knees and legs widespread in order to reveal the genital area in its entirety. In one of the pictures, all of these things are combined: The model, clad only in a framing black garter belt and black stockings is chained to a chair upon which she is seated, facing the camera, with one knee elevated and both spread wide."

*Central Magazine Sales, Ltd.* v. *United States, supra,* establishes that full views of female genitals,[7] no less than full views of male genitals, are not obscene in the constitutional sense.

I agree with Judge DANHOF that the trial judge clearly erred when he found that there was pander-

---

[7] A panel of 5 United States district judges sitting *en banc* in the district of Maryland held that issues of the Danish magazines "*Cover Girl*" and "*Exciting*" were not subject to seizure because not obscene in the constitutional sense. *United States* v. *4400 Copies of Magazines* (1967), 276 F Supp 902. A number of the exhibits in this case are copies of the same issues of the 2 publications ruled upon in the cited case; they are typical of the female genitalia exhibits.

ing in this case. The defendant sold these magazines in a bookstore to which no one under the age of 18 is admitted. There is a $1 admission charge, 50¢ of which is credited against any purchase. The defendant also operates an art, adult-only movie theatre. He advertises, on the screen and by displaying the magazines in the theatre lobby, the fact that such publications can be purchased at the bookstore.

By displaying the magazines themselves without any description of their contents the defendant avoided any characterization, suggestive or otherwise, concerning the nature of the magazines on display. By displaying the magazines in an "adult-only" movie theatre the defendant avoided any communication with persons who might regard the sight of such a magazine as an objectionable intrusion. The on-screen advertising of the availability of these magazines and their display in the lobby of such a movie theatre is neither "pandering" nor "obtrusive" in the sense in which those terms were used in *Redrup* and *Ginzburg* v. *United States* (1966), 383 US 463 (86 S Ct 942, 16 L Ed 2d 31).

I agree with my colleagues that the publications comprising exhibit 19 were illegally seized.

I would reverse and vacate the injunction.